Our fourth case this morning is Collins v. Berryhill. Mr. Kerbawi, did I do that correctly? Okay, come on up. Good morning, Your Honors. May it please the Court, my name is Chris Kerbawi and I am here on behalf of Brian Darrell Collins, my client. I did not represent Mr. Collins at the ALJ hearing, but I have represented him before the District Court and now the Court of Appeals. We started out with two Social Security hearings and then we took a break, so just to kind of set how I view these cases. When somebody is wrongly denied disability benefits and they are truly unable to work, they are left with no means of survival. And they are essentially banished from civil society. And that is a very harsh thing, and I take my duty very seriously when it comes to these individuals. And one of the things that always troubles me is that when you go in front of an ALJ, the ALJ is not only the representative for the government, they are also essentially the judge, jury, and executioner of that government decision. And yet, we are presented with what is supposed to be a non-adversarial proceeding. I am charged as being an advocate for my clients, and when I step into the ALJ's courtroom as an attorney, they view me differently than as if my client went in there unrepresented. The issue when it comes to the non-adversarial proceeding is very specific rules are imposed upon ALJs as to how they must handle the case. The issues in this case boil down to the ALJ's responsibilities to fully and fairly develop the record, regardless of the presumption that I, as an attorney, am going to present the best case for that person. There is a baseline requirement that the ALJ fully and fairly develop the record. In this case, that essentially went to how the records were considered. There was a large evidentiary gap that just so happened to be the evidence of a treating provider that provided a medical source statement that has also with it requirements as to how that medical source statement is going to be evaluated. In my brief, I cited 20 CFR 416.927C2, which states when a medical source statement is not given controlling weight, there is requirements as to how that medical opinion will be waived. Are we under the old regs for treating physicians here? Correct, Your Honor. This case was decided in 2015 before we changed this. Could I ask you, counsel, to – there's both a legal issue and a factual issue here concerning development of the record. You seem to want us, in your brief, to reconsider our case law about the extent of that duty to develop the record when the claimant has counsel. That's a legal issue. You've addressed it in some detail. But there's also a factual question about how significant that was here. And in your brief, you've identified what I thought were supposed to be the silver bullets, the great evidence at page 15. And I look at it, and I don't see – what I see is evidence of temporary limitations because of injury, an acute injury. But I don't see anything that would suggest long-term disability there. I'm assuming that you're referring to the clinical notes from Dr. Weber. Particular – yeah, August 21st, 2013, the shoulder separation, a fall. And I mean, I can imagine, barely, the pain involved in that. But that's a temporary kind of a problem, not the stuff of long-term disability. There was an indication in there of left shoulder separation after a fall correct. In regards to the other muscular skeletal findings, there was a clavicle superiorly displaced with tenderness at the AC joint. Honestly, I don't know what all that means. I'm not a doctor. But those seem to be referring to more long-standing conditions, not just something that was exacerbated by a fall. Those are a separate listing within the records beyond just the issues that were incurred because of the fall. So the issue goes to, are these records essential? Are these records referring to an evidentiary gap in the file? And they are. They refer to Dr. Weber's treatment, which followed up on Dr. Montoto's treatment and Dr. Laguna's treatment at the same clinic. Prior to him meeting with Mr. Collins and writing the letter, Dr. Weber did have a follow-up treatment as well after the letter was written. These records were obviously out there at the time of the hearing. The claimant had filled out a form talking about the records that were his treatment records, and he had listed these providers as a provider. At the hearing, he testified that he had seen these providers every two weeks. Not this one, though. That's an additional problem that I have with your argument and placing so much weight on this single issue of Dr. Weber's records. He saw him only once before he issued this opinion, so he did not have any history with this claimant, and he didn't follow him either. He saw him only once more after this opinion that you placed so much weight on was issued. And so this is not like a long-time treating physician whose records need to be taken into consideration and examined more thoroughly. This is essentially a one-off for Dr. Weber. The records themselves can't really bear the weight that you want them to bear, and if they did, then it was the obligation of your predecessor counsel to produce them if they're that critical. You can't fob it off on the ALJ. That's what our case law says. There's a lot there. There's a lot there to digest, and I get it. The issue with the records from the Community Health Center was that Mr. Collins was seen prior by Dr. Weber's associates, Dr. Laguna and Dr. Montoto. And so those records would have been reviewed at the time of him evaluating the claimant and making his determinations of residual functional capacity that would make him unable to do any work. In regards to the responsibility of the ALJ to request those records nonetheless, that goes to my discussion about the importance of an ALJ fully and fairly developing the records regardless of a presumption that a claimant is presenting their best case. And going back to the first question about me trying to undo the current case law, I think my brief lays out clearly that I'm not trying to undo the case law. I am merely trying to point out that there is not actually this daylight between the Eighth Circuit's interpretation of the regulations and the Seventh Circuit's interpretations of the regulations. The Social Security Administration is essentially trying to argue that when there is an attorney, there is no obligation on the part of the ALJ to fully and fairly develop the record, and that is not the case. And I think the Eighth Circuit's interpretations and the discussion that they have in the Sneed case is very helpful to understanding the importance of that requirement to fully and fairly develop the record. And so I think that's a valuable persuasive authority. I would like to reserve just a minute for a rebuttal. That's all about all I have left. But I did also want to just touch on the other issue here is regarding the need to adequately address the vocational expert testimony that may conflict with the Dictionary of Occupational Titles. This is the other core issue in this case, and the ALJ has a duty to ask the questions to clarify if there is a conflict and to explore that conflict. The government has told us that that problem is harmless. Do you want to address that issue? That there's a harmless error because of waiver? Well, it didn't go in the Dictionary of Occupational Titles, if I understood the point correctly. I may not have. It is not a harmless error because, A, that issue was not raised at the district court. The district court brief by the government was about eight pages. It did not address the issue of whether there was a failure to address that in the hearing on the part of the prior counsel for Mr. Collins by not questioning the VE. That was not addressed at the district court level. And also, there was not an issue about how obvious the conflicts have to be before an ALJ has a duty to address the issues. That issue was not raised at the district court either. Thank you. Ms. Tuber. May it please the Court. My name is Hannah Tuber on behalf of the Acting Commissioner of Social Security. Turning to the first point, the ALJ does, in fact, have a duty and a burden to fully and fairly develop the record. However, in this case, the ALJ did satisfy that burden. As Your Honors point out, the actual records in this case, the medical records, do not represent a significant omission here. There is no prejudice for Mr. Collins' case. That's two different things. One is whether the ALJ should have gotten the records, right? Sure. I would think the answer to that is yes. No, Your Honor, the ALJ… The second argument I thought was, well, now that we've seen them, it's not that big a deal. Yes, Your Honor. They are two separate issues. Firstly, addressing the first issue, the ALJ was reasonable when you look in context as to why these records weren't requested. Here, he had before him two recent medical treatment forms, the first one from 2013 in which he had the opinion from Dr. Weber, and then a second recent medical treatment form. This is at page 243 to 244 of the record, in which the only doctor listed was Dr. Shad. In 2014, Dr. Weber did not appear again. And Dr. Weber's name was brought up at the hearing. However, as Your Honor pointed out, he had only seen Dr. Weber a total of two times. And so here, it was reasonable that the ALJ did not seek out these records. And again, it is a shared burden. And as Your Honor has correctly pointed out, Mr. Collins and his attorney did not provide these records. And if they found them to be essential, they should have. And they don't argue why they didn't provide the records or give any type of reason as to why they did not. And as for whether the records create any prejudice in this case, they do not. The records were cumulative. They showed such things as normal appearance of the spine and ability to stand on heels and toes, normal neurological findings, negative straight leg raise tests. Even at Dr. Weber's own exam, essentially he found shoulder pain and back pain. He found abnormal feet without swelling, without joint swelling or tenderness, and also a normal neurological examination. So the prejudice that's required simply does not exist here. Turning to the vocational issue in this case, the ALJ did satisfy Social Security Ruling 00-4P by affirmatively asking if the vocational expert's testimony conflicted with the Dictionary of Occupational Titles. After that, Mr. Collins' counsel did not question the vocational expert on her vote, on her foundation, or her reasoning for her testimony. And furthermore, when DOT numbers were offered to Mr. Collins' counsel, he explicitly declined them. So under Britton v. Astrew, this Court has said that a vocational expert has satisfied their burden to produce their underlying foundation and reasoning if they have information available on demand. And in that case, the opposing counsel, Clayman's counsel, did not specifically... He declined information from a vocational expert. And that is analogous to this case here, in which Mr. Collins' counsel declined DOT numbers when he had the opportunity to receive them. Your Honor was correct that we made a harmless error argument, and it's an important argument here. There is no actual conflict between the vocational expert's testimony and the sedentary assembler position, of which the vocational expert testified that there are 50,000 of those positions in the national economy. And I gave a sampling in my brief, but there are many sedentary assembler positions available. And furthermore, the conflict did not become apparent in this case. As I stated before, Mr. Collins' counsel did not question the V.E.'s foundation or reasoning. The ALJ was reasonable in relying on the vocational expert in this case, who testified that she had 30 years of experience placing people with disabilities in jobs. She had a Ph.D. in rehabilitation psychology. So she was an expert in this case, and it was reasonable that everybody involved relied on her baseline conclusions. If the Court has no further questions, then the Commissioner asks that you affirm the ALJ's decision. Thank you. We didn't have much time left, but go ahead, have at it. Thank you, Your Honor. The issue is that this is essential under the CFR that I cited to evaluate Dr. Weber's opinion. These are the treating notes of his treating providers before him and his notes at the time. They're not cumulative. They are his records. They fill an evidentiary gap. Those records were not in the file. Cumulative would be other records from other providers that are already in the file. That's all. Thank you. All right, thank you. Our thanks to both counsel. The case is taken under advisement.